UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CT-3106-BO

| | | |
|---|---|---|
| TIMOTHY R. DAVIS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| EMILE PRINCE, et al., | ) | |
| Defendants. | ) | |

Timothy R. Davis, an inmate within the custody of North Carolina, filed this 42 U.S.C. § 1983 action. Defendants Emile Prince, Patricia Chavis, George Kenworthy, Lieutenant Torens, and Patsy Chavis have filed a motion for summary judgment [D.E. 52] to which plaintiff has responded [D.E. 56]. Prior to ruling on the summary judgment motion, plaintiff's request for the discovery of a video under Rule 56(d) of the Federal Rules of Civil Procedure was allowed to a limited degree and is discussed more fully below [D.E. 56 and 59]. Likewise, on January 30, 2013, the court ordered that the summary judgment motion be supplemented to include the medical records which appear to have been inadvertently left out of the records [D.E. 61]. Those records were also served on plaintiff. Id. In this posture, the motion is ripe for determination.

ii. Discussion

    a. Summary Judgment

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its

burden, the non-moving party may not rest on the allegations or denials in its pleading, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation omitted & emphasis removed). A trial court reviewing a summary judgment motion should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. The court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. See Matsushita, 475 U.S. at 587. The court can rely on the medical affidavits and prison medical records, including mental health records, in ruling on a motion for summary judgment. See generally, Stanley v. Hejirika, 134 F.3d 629, 637-38 (4th Cir. 1998); Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995); Marshall v. Odom, 156 F. Supp. 2d 525, 530 (D. Md. 2001); Bennett v. Reed, 534 F. Supp. 83, 86 (E.D.N.C. 1981), aff'd, 676 F.2d 690 (4th Cir. 1982).

b. Facts and Procedural History

Around 7:25 p.m. on December 6, 2010, defendant Prince and Correctional Officer Strickland were performing a security check on E Pod at Tabor Correctional Institution. Compl., IV. Statement of Claim. Plaintiff approached defendant Prince and asked for a Policy and Procedure manual so he could prepare for a video conference hearing before the Industrial Commission. Id. Defendant Prince told plaintiff only one manual was available per inmate. Id. and Mem. in Supp. of Summ. J., Aff. Prince. Plaintiff states that because defendant Prince said he could not have the manual plaintiff began "to explain why [he] needed the DOC policy" yet defendant Prince cut him off. Compl., IV. Statement of Claim. At that point, plaintiff says he turned and began discussing his upcoming hearing with another inmate. Id.

2

Plaintiff states without provocation, defendant Prince then sprayed two short bursts of pepper spray towards plaintiff face, cuffed him, and escorted him to segregation. Id. He asserts that defendant Prince and Correctional Officer Strickland placed him in a hot water shower to decontaminate him wherein he fainted. Id. Plaintiff states that he begged to be decontaminated with cold water, but both the officers and the nurse ordered him out of the shower. Id. Next Nurse Strickland "only checked [his] blood pressure and breathing." Id. Plaintiff states he then requested from defendant Toren that he be allowed to continue to decontaminate with cold water, but again the request was denied. Id.

Plaintiff states that from this hot shower and the spray, his "skin peeled off leaving the area swollen and very raw (pink like ya know)?!" Id. The following day the nurse washed and dressed his injuries. Id. Plaintiff sought review of the video tape and photographing of his injuries. Id.

Plaintiff sought discovery of a video tape and affidavits in a Rule 56(d) motion in response to defendants' motion for summary judgment [D.E. 56]. On January 11, 2013, prior to ruling on the pending motion, the court entered a detailed order granted to a limited extent plaintiff's Rule 56(d) request [D.E. 59]. The request was limited to producing the video to the court to allow the court to determine whether in fact it contained footage of the incident thereby supporting plaintiff's argument that it did contain relevant footage. Id.

The video was produced [D.E. 60] and the court fully reviewed its content as allowed by Rule 56(d)(3). On February 6, 2013, defendants also filed notice that on February 4, 2013, plaintiff viewed the video tape. The court finds that the video, as represented by defendants, does not contain useful footage of the incident itself. The camera is too far away, there is no

3

sound, and the incident is blocked by a stairwell. While it is true the footage is of the time period and inmates who can be seen begin to simultaneously cover their faces with tee shirts, the video does nothing to support plaintiff's allegations. While a guard can be seen escorting an inmate whose head is hung and who is cuffed, there is no altercation during this time between the guard and the inmate, nor does the inmate appear in physical distress. The pair, the guard and inmate, are simply walking along without incident. The video tape does nothing to support plaintiff's contentions.

Plaintiff's next assertion within his complaint is somewhat difficult to understand. In part of his complaint, he asserts that Tabor Correctional Institution did not mail a motion (his legal mail) in his Industrial Commission suit. Compl., IV. Statement of Claim. Following this he states that in fact, Tabor Correctional outgoing legal records show that on February 14, 2011, service was duly made on both the Honorable Abigail M. Hammond and Ms. Christina S. Hayes, thus illustrating "Ms. Hayes & TCI Official George Kenworthy appear to have conspired to lie to the N.C. Industrial Commission." Id. Plaintiff asserts that he believes he was transferred to Tabor Correctional Institution because he filed a tort claim and in an effort to retaliate and harass and to deter plaintiff from litigating the claim before the North Carolina Industrial Commission. Id.

Defendants' factual outline of the events differ from plaintiff's allegations as follows. Defendants assert that plaintiff was verbally agitated after defendant Prince explained that the requested manual was unavailable. Mem. in Supp. of Summ. J., Aff. Prince. Defendant Prince continued with the security check. Id. Plaintiff then threatened defendant Prince and his right hand was clenched into a fist. Id.

4

At this point, defendant Prince sprayed two short bursts of pepper spray towards Plaintiff's face and ordered him to put his hands behind his back to be cuffed. Id. Plaintiff did not comply with the order, and defendant Prince administered two more short bursts of pepper spray. Id. Plaintiff then complied, and his hands were cuffed behind his back. Id. Officer Strickland escorted Plaintiff to Segregation, placed him in a shower in A Pod, and removed his handcuffs. Answer. Plaintiff was allowed about twenty-four minutes in the shower in which to decontaminate himself. Answer at Ex. 2 p. 10, 13.

Plaintiff was next seen by a nurse, who observed no signs of injury and who noted his vital signs were within normal limits. Id. at p. 11, 14; medical notes, D.E. 63, p. 13. The following day, plaintiff requested medical attention and was seen by a nurse. Answer, # 11, D.E. 63, p. 13. The nurse observed a wound on plaintiff's left shoulder and upper left arm thought to be self inflicted and with no active bleeding or drainage. Id.. Furthermore, on several subsequent dates, plaintiff refused to be seen regarding the shoulder and arm, however, medical records refer to the area in question as either an abrasion or "chemical burn." Id. p. 3 and 13. It appears a double antibiotic ointment was given to inmate however no further medical care was required. Id.

In accord with prison policy for a use of force incident, a written report was prepared describing the force used against plaintiff on December 6, 2010. Id. at pp. 9-12. Plaintiff filed a grievance regarding the incident, but his grievance was denied by the Unit, the Institution, and the Inmate Grievance Resolution Board. Id. at pp. 1-7, 36. Plaintiff was charged with three prison disciplinary offenses arising from his misconduct – making a threat toward staff, using

profane language, and disobeying and order – and was found guilty of all three charges. Id. At Ex. 7.

   c.   Qualified Immunity

Defendants assert qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir.2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. at 286. The Fourth Circuit has recognized a two-pronged qualified immunity inquiry:

> First, we must decide whether a constitutional right would have been violated on the facts alleged. Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right.

Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003) (internal quotations omitted). In resolving the second step, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was lawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), receded from by, Pearson v. Callahan, 555 U.S. 223 (2009). A court has discretion to decide which step of the two-prong test to analyze first. Pearson, 555 U.S. at 242.

   d.   Excessive Force

The court first determines whether defendants violated plaintiff's constitutional rights. It is clearly established that the Eighth Amendment forbids the "unnecessary and wanton infliction

6

of pain" against inmates. Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotation marks omitted). Not every infliction of pain is forbidden, however, and prison officials may apply force to an inmate "in a good faith effort to maintain or restore [prison] discipline." Id. at 320 (internal quotation marks omitted). However, where prison officials use force "maliciously and sadistically for the very purpose of causing harm," an Eighth Amendment violation has occurred. Id. at 320-21 (internal quotation marks omitted). Furthermore, the Supreme Court has held "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." Wilkins v. Gaddy, ___ U.S. ___, ___, 130 S. Ct. 1175, 1176 (2010). The court must look at "the nature of the force rather than the extent of the injury." Id. "This is not to say the 'absence of serious injury' is irrelevant to the Eighth Amendment inquiry." Id. at 1178 (citation omitted). It is one factor in applying and reviewing the Eighth Amendment analysis. Id.

In determining whether prison officials have acted maliciously and sadistically, a court should balance: (I) "'the need for the application of force,'" (ii) "'the relationship between the need and the amount of force that was used,'" (iii) the threat reasonably perceived by the responsible officials, and (iv) "any efforts made to temper the severity of a forceful response." Whitley, 475 U.S. at 321 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). Not every malevolent touch by a prison guard, later determined in the calm of a judge's chambers to be gratuitous, gives rise to a federal cause of action. Hudson, 503 U.S. at 9 (citing Johnson, 481 F.2d at 1033). Prison officials are charged with balancing competing governmental interests, such as: the maintenance of order; protection of correctional officers, prison staff and other inmates; and inmates' rights to be free from cruel and unusual punishment. Whitley, 475

7

U.S. at 321. When correctional officers use force to keep order, they have little time for considered reflection and must quickly and decisively balance the need to maintain order and restore discipline through force against the risk of injury to inmates. Hudson, 503 U.S. at 6.

Plaintiff cannot show that defendants used force which was excessive. It appears from the facts before for the court, that on December 6, 2010, plaintiff sought a manual which was not provided to him. This frustrated plaintiff, and by his own admission, he confronted the officer about the situation. Officer Prince believed the situation required heightened action and reacted by administering approximately 2 to 4 bursts of mace. Thereafter, plaintiff submitted to being handcuffed by defendants Strickland and Prince. He was then escorted to the decontamination area.

While plaintiff contends that he was allowed to be "decontaminated," he asserts the process was handled improperly. However, plaintiff does state the process was undertaken, a nurse was present, and that a nurse evaluated him to a limited degree. The medical affidavits and incident reports indicate that decontamination was undertaken and a medical evaluation was conducted. On the day in question, no injury was noted and plaintiff's vital signs were normal. As a result of the mace or alleged activity on the day of the incident there may have been a chemical burn on part of plaintiff's arm which was treated with antibiotic ointment; however, no further medical care was necessary.

The materials show that the amount of force used by defendants was limited to the amount necessary to restrain plaintiff and to restore order; it was not maliciously and sadistically used to cause harm. The medical records support this holding. Even if plaintiff's skin had a

reaction to the mace, it was not intended or done to cause harm. Excessive force has not been shown in the matter and defendants are cloaked with qualified immunity.

  e.  Retaliation

Claims of retaliation by prison inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). "To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999).

To address this claim, the court shall review that which is necessary to establish a claim for retaliation. The right at issue here is that inmates have a right to reasonable access to state and federal courts. See, e.g., Ex Parte Hull, 312 U.S. 546, 549 (1941); Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978) (per curiam). Legal mail generally may not be opened outside of the presence of the prisoner-addressee. Wolff v. McDonnell, 418 U.S. 539, 578 (1974). However, in order to state a claim for denial of access to the courts, the inmate must show actual injury or that defendants' conduct hindered his efforts to pursue a legal claim or show actual harm by the opening. See, e.g., Lewis v. Casey, 518 U.S. 343, 351–54 (1996); Michau v. Charleston County, 434 F.3d 725, 728 (4th Cir. 2006); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (en banc); American Civ. Liberties Union v. Wicomico County, 999 F.2d 780, 785-86 (4th Cir. 1993). Furthermore, isolated incidents without negative consequences to plaintiff do not constitute a constitutional deprivation of one's rights. See, e.g., Buie v. Jones,

9

717 F.2d 925, 926 (4th Cir. 1983) (occasional accidental opening of legal mail does not state of claim of the denial of one's right to the access of court).

In addition, "prison officials' actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action." Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1998). In order to show actual injury, "a plaintiff must provide evidence of such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials." Id. at 1290-91 (citations omitted). Plaintiff has failed to show any harm to any legal matters because of the alleged mail incident or incidents. Plaintiff, in fact, states that he has pursued the action in the Industrial Commission and that it is ongoing.

Lastly, plaintiff's assertion that he believes he was transferred to Tabor Correctional Institution because he filed a tort claim to retaliate, harass, and deter plaintiff from litigating the claim before the North Carolina Industrial Commission is a conclusory assertion with no supporting facts, no resulting injury, and fails to state a claim. See White v. White, 886 F.2d 721, 723 (4th Cir. 1989) (a minimum level of factual support is required in pro se litigation). Plaintiff states that the Industrial Commission litigation is ongoing and has continued during his period of custody at Tabor Correctional Institution, thus he refutes his own assertions.

10

Case 5:11-ct-03106-BO   Document 64   Filed 02/13/13   Page 10 of 11

H.  Conclusion

For the above stated reasons, defendants' motion for summary judgment is GRANTED and the matter is DISMISSED [D.E. 52]. The Clerk is DIRECTED to CLOSE the case.

SO ORDERED, this the 12 day of February 2013.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE